Emma C. **FAIR**, Appellant,

v.

Ruth F. **MOORE**, Appellee.

No. 13197.

District of Columbia Court of Appeals.

Argued Nov. 21, 1978.

Decided Feb. 15, 1979.

* Associate Judge Gallagher did not participate in the foregoing order.

Richard Ross, Washington, D. C., for appellant.

James L. Rider, Washington, D. C., for appellee.

Before KELLY, NEBEKER and HARRIS, Associate Judges.

NEBEKER, Associate Judge:

This appeal from a summary judgment in favor of a surviving designated beneficiary of a government sponsored group life insurance policy presents the question of whether the designation was "received before death in the employing office"[1] when it was left with the personnel office of the District of Columbia Department of Human Resources, the employing agency of the insured. We deem the term "employing office" to encompass the personnel office of the agency by which the insured was employed. Accordingly, we affirm.

James Fair worked in the Narcotics Treatment Administration, an agency within the District of Columbia Department of Human Resources. On November 15, 1974, he executed a form designating his sister, Ruth Moore, as the beneficiary of his life insurance policy with the Federal Employees Group Life Insurance Program. In one visit to his personnel office, Mr. Fair received the beneficiary form which he executed, had witnessed and then deposited with the employees of the office. On November 17, two days later, Mr. Fair committed suicide. The designation form was transmitted to the District of Columbia Accounting Office, the central office for the District of Columbia government, for purposes here relevant, on November 20. Subsequently, the responsible official in the Payroll Division of District Accounting certified that there was no designation of beneficiary there on file as of Mr. Fair's death. This action would have qualified Mr. Fair's widow as the beneficiary of the policy under 5 U.S.C. § 8705(a) (1970), which provides, in pertinent part:

The amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:

---

1. 5 U.S.C. § 8705(a) (1970). The Federal Employees Group Life Insurance Act of 1954 as amended, is codified at 5 U.S.C. §§ 8701–8913 (Supp. V 1975).

First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing *received before death in the employing office* or, if insured because of receipt of annuity or of benefits under subchapter I of chapter 81 of this title as provided by section 8706(b) or (c) of this title, in the Civil Service Commission. For this purpose, a designation, change, or cancellation of beneficiary in a will or other document *not so executed and filed has no force or effect.*

Second, if there is no designated beneficiary, *to the widow* or widower of the employee. [Emphasis added.]

However, the trial court effectively overturned the administrative ruling by holding that the designation was "received in the employing office," within the meaning of § 8705(a), *supra,* before Mr. Fair's death. The issue presented is whether "employing office", as used in § 8705(a), includes a personnel office of a District of Columbia agency, rather than being limited to the payroll office of District Accounting.

Appellant argues that the District of Columbia accounting office is and can be the only employing office for one employed as Mr. Fair, for § 8705(a) purposes. The accounting office permanently maintains the beneficiary designation papers. The appellant also urges that strict and literal compliance with the statute is required and that because the statute states "employing office" in the singular, it cannot include the many personnel offices of the District of Columbia agencies. We find these contentions to be unpersuasive since (1) the statute if so construed would be in undue derogation of an insured's common law and statutory right to designate freely an insurance beneficiary [2] and (2) the purpose of the procedural restrictions of § 8705(a), as

amended, is to avoid the administrative difficulties and delay in disbursing benefits resulting from conflicting claims, under the group program, arising out of private, designating documents not in official possession at the time of death.

The last sentence of the second paragraph of § 8705(a) was added in 1966 in reaction to *Sears v. Austin,* 292 F.2d 690 (9th Cir. 1961), holding that a holographic will purporting to designate a beneficiary under the same insurance program was valid. The legislative history evinces that the amendment was only "to insure that the contract of insurance would prevail in all cases regardless of the claims of any parties other than the designated beneficiary or the person entitled to payment under the provisions of section 4." S.Rep. No. 1064, 89th Cong., 1st Sess. 1, 2 (1966), *reprinted in* [1966] U.S.Code Cong. & Admin.News pp. 2070, 2071. Thus, Congress sought merely to require official receipt of a designation and not to further limit the right of an insured to name a beneficiary of his life insurance policy. This statutory purpose is hardly fostered by a requirement that administrative processing to a central office must win a race with death. We hold that § 8705(a) is satisfied when, as here, an employee leaves with his agency's personnel office a properly executed and witnessed official form supplied him by the government for the purpose of beneficiary designation. This holding preserves the greatest freedom to name a beneficiary consistent with the need for *inter vivos* official documentation of that choice. It is, we think, faithful to the use of the term "employing office"—the immediate government entity in the employment relationship with the insured.[3]

*Affirmed.*

2. *Sears v. Austin,* 292 F.2d 690 (9th Cir. 1961), which in 1966 was in effect overruled by an amendment to 5 U.S.C. § 8705(a), *see infra,* is replete with cases indicating that the intent of the deceased should be followed notwithstanding the deceased's having failed in certain formalities in designating a beneficiary. *But see Breckline v. Metropolitan Life,* 406 Pa. 573, 178 A.2d 748 (1962) (holding contrary to *Sears* ).

The formalities in § 8705(a) were intended by Congress to defeat the deceased's intent only to the extent necessary to minimize the delay in payment of benefits and the administrative burden that attend conflicting adverse claims.

3. We do not find that a different result is compelled by resorting to the Civil Service Commission Federal Personnel Manual (FPM). The

sections cited by the appellant in her brief, §§ S1–4(a) through S1–4(d), and § S1–7(a)(7), shed no light on the issue. The sections were equally persuasively argued by the appellee in support of her position. Neither party referred, however, to the District of Columbia Personnel Manual (DPM), chapter 23, which treats employee insurance. Without deciding what weight, if any, should be accorded the provisions of that manual, we note that it implicitly provides that an "employing office" entails something more than the "payroll office" of District Accounting. For example, at DPM 23A–30 (effective 7/26/74), with regard to the use of form 176, the manual states:

> Election, Declination, or Waiver of Life Insurance Coverage
> A form to be filled in by the employee and returned to the employing office. One copy of SF 176 should be *sent by the employing office to the payroll office.* The original should be filed in the official personnel folder. [Emphasis added.]

The instructions in the DPM regarding form SF 54, "Designation of Beneficiary," which Mr. Fair completed, may be a cause of some confusion. They were modified on February 3, 1976, perhaps in response to this litigation, and read as follows:

> A form to be filled in by the employee and returned to the employing office. The employing office should send both copies of SF 54 to the payroll office. Payroll keeps the original and sends a copy back to the employing office. The employing office then gives the copy to the employee. * This form becomes effective on the date received and officially stamped by the Payroll Section, [Office of Budget and Management Systems].*

*Id.* at 23A–31 (effective 2/3/76) (asterisks in original, possibly designating an amended portion); *see* DPM 23A–27 (effective 2/3/76) (employing office must inform employee "that a designation of beneficiary form *is not* in force until it is officially received *and date stamped* by the Pay and Retirement Division, O.B.M.S."). When considered in conjunction with 5 U.S.C. § 8705(a) (1970), the instruction raises two points worthy of note. First, it effectively defines the "employing office" as an entity apart from the "payroll office," consistent with our holding in this case. Second, the portion enclosed by asterisks appears to attempt to amend 5 U.S.C. § 8705(a) (1970). Section 8705(a) states that a designation of beneficiary is effective if "received before death in the employing office . . .," whereas DPM 23A–31 states that the designation is effective only when the employing office has transmitted the designation to the payroll office. A conflict thus appears to exist between the statute and the regulation. Furthermore, while 5 U.S.C. § 8716 (1970) accords authority to the U.S. Civil Service Commission to "prescribe regulations necessary to carry out the purposes of," *inter alia,* § 8705(a), we are unaware of any law that accords similar authority to the District of Columbia. Accordingly, we question first whether the regulation is consistent with the statute and second whether the regulation, even if consistent with the statute, should have any effect upon an interpretation of § 8705(a). As the issues were not raised by the parties, however, we intimate no decision on the matter.